## The Chicago & Alton Railway Company v. Mary Meyer, Administratrix.

1. PASSENGERS—*carrier owes no obligation to see that, depart at proper station.* A railroad company, while it is obligated to announce stations approached or reached, and to give a reasonable time to passengers to leave the train, is not required to see that they do in fact depart from the train upon arriving at their destinations.

Action on the case for personal injuries. Appeal from the Circuit Court of Logan County; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the November term, 1905. Reversed and remanded. Opinion filed June 8, 1906.

PATTON & PATTON, for appellant; F. S. WINSTON, of counsel.

BEACH, HODNETT & TRAPP, for appellee.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion of the court.

Kilian Meyer, deceased, who lived at Lincoln, Illinois, on the third day of September, 1902, in company with Henry J. May, a friend, went to a neighboring town about noon, and after having remained there two or three hours, returned to Lincoln on a limited passenger train of appellant. The evidence tends to show that both Meyer and May failed to get off the train at Lincoln; that Meyer was to some extent under the influence of liquor; that soon after the train had left the depot they requested the conductor to stop his train, which he did, when May left the train voluntarily and Meyer, it is alleged, was forcibly ejected by the conductor, whereupon he fell or rolled down an embankment from which he suffered an injury to one of his legs, for which he brought suit against appellant.

Meyer died, from a cause other than the injury sued for, pending the litigation, and appellee, his wife, was made a party plaintiff as administratrix. Upon the trial of the cause she recovered a verdict against appellant for the sum

of $1,500 upon which a judgment was rendered. The railway company appealed.

The declaration contained two counts, the first of which charged in substance that the conductor with force and arms violently, wilfully and maliciously forced, ejected, drove and hurled deceased from the coach whereby he was thrown down an embankment and injured; the second count charged that deceased, on account of the door being locked at the rear of the coach in which he was riding, was unable to leave the train at Lincoln before it was put in motion and that the appellant carelessly and negligently ordered and directed deceased to alight therefrom at a dangerous and unsafe place and that deceased, while in the exercise of due care, slipped and fell and was thrown down an embankment and injured.

The first error assigned, to which we care to give attention, relates to the action of the court in admitting evidence to the effect that the conductor, while his train was in Lincoln, did not notice whether May and Meyer got off the train.

The admission of this evidence was clearly error in our judgment and could not have failed to prejudice appellant's cause, and tended to lead the jury to conclude that the law imposed upon the conductor the duty of seeing that all persons on a train should leave at the station or stations to which they were ticketed. Railroad companies are required to announce stations approached or reached, and give passengers a reasonable time in which to leave the train, but are not required to see that passengers do in fact depart from the train upon arriving at their destination. Such a rule would be unreasonable and would impose an unjust burden upon the servants of the company.

In the case of the Southern R. R. Co. v. Kendrick, 90 Amer. Dec. 332 (Mississippi), where this question was discussed, the court say: "As to passengers, it is presumed that they are desirous and ready to quit at their point of destination, and it is not the duty of the carrier to put them off; because, as rational beings, it is to be presumed

that they will do what they expressly set out to do. It would be unreasonable to require personal warning to each individual passenger, because it would require much time to do so in trains crowded with passengers; it would cause much detention in traveling, which would be a public inconvenience, and it would impose a duty on conductors where there was a long train and many passengers, which it would require an extraordinary memory to perform properly and would often be omitted through mistake or want of memory."

The same doctrine in substance is announced in Louisville & N. R. R. Co. v. Espenschild (Indiana), 47 N. E. Rep. 186, where it is said: "There is no obligation, that we are aware of, placed upon the servants of railroad companies engaged as common carriers to pass through the train of cars and inquire or see if all the passengers who desire have left the train at any station."

Besides being incompetent in itself there was no charge in the declaration that such action of the conductor was negligence. Appellee must recover, if at all, upon the negligence stated in her declaration.

It is also contended by appellant that the verdict was clearly against the weight of the evidence, and that the trial court should have granted its motion for a new trial.

Upon the issue as presented by the first count of the declaration the only evidence upon the part of appellee was given by Meyer (deceased) and Joseph Schilling.

Meyer said that the conductor pushed him hard enough to make him fall, and Schilling, in speaking of the amount of force used, said: "He just turned Meyer around and took him by the shoulders and he got down; just pushing him; he didn't use any bad force; he did not lay his hands upon him roughly; he just turned him around and had his face going out towards the steps; I could not see any force; he just simply pushed him off and told him to get off."

Upon the part of appellant the evidence upon this subject was given by Corey, the conductor, and Castle, the baggage master. The conductor swore that: "Meyer

was on the lower step; he turned around and faced me and slid off; I was not near him; he backed off, and when he backed off he fell down the foot path."

Castle testified: "I saw one man get out and walk a few steps; then another man came out backwards, feet first, and his toes kind of slipped out from under him and he came down on his hands and knees."

The testimony of Schilling does not seem to corroborate that of deceased; and it seems quite unnatural that if Meyer was being subjected to the harsh treatment he claimed, May, who had just stepped off the car in advance of Meyer, and who had been his companion most of the day prior to that time, should not have heard anything whatever upon that subject.

We do not think the evidence in the case warrants the special finding of the jury that the injury to Meyer was caused by the servant of appellant in the manner charged in the first count of the declaration.

Whether the train was in Lincoln long enough to allow deceased and May to alight is a question not altogether free from doubt. Deceased and May both testified that they first went to a door in the rear of the car, which they found locked, and that before they could reach the door in the forward end of the next car, to which they had to go to leave the train, the train was in motion again. It seems to be conceded that the train stopped in Lincoln about three minutes, and it is something of a problem to determine how deceased and May employed their time for about three minutes trying to depart from the train and failing to do so, since they both knew of their arrival at their destination and seemed anxious to alight, and when many other passengers had no trouble in finding ready egress from the train. However that may be, even if the relation of carrier and passenger was renewed or extended by the departure of the train from Lincoln, as contended by appellee under her second count, deceased and May by their own act ended that relation by demanding that the train be stopped that they might leave it. Both, deceased and May,

in their testimony, agree that they determined to have the train stopped that they might get off. May testified: "It was decided between us that I should ask the conductor to stop the train and let us off, and I went forward for that purpose; when I saw the conductor, he at once pulled the bell cord, stopping the train as soon as it could be stopped." Under such circumstances it became the duty of deceased and May to leave the train, and the only duty appellant owed deceased after the demand made upon it by deceased and May, was to stop the train a seasonable length of time and at a place where it was reasonably safe for him to alight. Upon this subject the weight of the evidence seems to preponderate in favor of appellant. May, who got off the train at the same time that deceased did, and with precisely the same surroundings, had no trouble whatever in getting off the train safely, and says there was a well-beaten path there; that he had no trouble in getting off; it was a perfectly even, smooth place to step off. There was no occasion for any difficulty in getting off on the foot path at that place.

Hailey testified that there was a foot path there showing much use, between the outer edge of the ballast and the edge of the bank. The preponderance of the evidence is to the effect that it was a reasonably safe place to alight, and that if deceased had used the same care in alighting that May employed he would, in all likelihood, not have been injured. There was no sufficient evidence in the case to warrant a recovery upon either the first or second count of the declaration.

For the reasons stated the judgment is reversed and the cause remanded.

*Reversed and remanded.*